The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Shuping. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. At the time in question the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employment relationship exists between plaintiff-employee and defendant-employer.
3. Defendant-employer was qualified a self-insured, whose claims were administered by Consolidated Administrators, Inc.
ADDITIONAL STIPULATIONS
1. A transcription of the recorded statement taken of plaintiff by a representative of the involved servicing agent on September 25, 1995 regarding the circumstances surrounding her injury.
2. Medical records from the treating physicians involved, including as part thereof, the orthopedic surgeon that performed corrective surgery for her resulting hip fracture, Dr. James Watson.
* * * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is a 47 year old married female with a high school education, who did not have an antecedent history of right hip problems until approximately ten days to two weeks prior to the August 22, 1995 date in question.
2. When injured she was employed as a manager of her brother's restaurant and had been for eleven years.
3. In addition to supervising other employees, as restaurant manager plaintiff was responsible for such duties as answering the telephone, seating and greeting customers and making drinks, which required her to be on her feet for substantial periods of time and did not provide the opportunities for sitting down that her current desk clerk job allows.
4. The restaurant was open from April to November each year and thus plaintiff's job was a seasonal one. Prior to mid to late June of 1995 the last table was seated at the restaurant at 10:00 p.m. and plaintiff would ultimately leave work at 12:00 a.m. or 12:30 a.m. when the restaurant was cleaned and closed. Plaintiff worked six days a week and ordinarily reported to work at 3:00 p.m. In mid to late June of 1995, however, the restaurant began providing nightly entertainment in the form of a hypnotist, whose show was scheduled to begin at 10:00 p.m. and last for an hour. Although the last table for dinner was seated an hour earlier (at 9:00 p.m.) to accommodate the nightly entertainment; because of the entertainment, the premises stayed open longer requiring plaintiff to remain an additional hour to an hour and a half, thus requiring her to be on her feet longer.
5. Assuming arguendo that the additional time plaintiff was required to be on her feet after defendant began providing nightly entertainment either caused or was a significant contributing factor in the disabling stress fracture of the plaintiff's right hip, plaintiff had been working as such for almost two months at the time of the same injury and as a result it had become a regular and expected part of manager's routine to remain at the restaurant an hour to an hour and a half later each night.
6. Approximately ten days to two weeks prior to the August 22, 1995 date in question and without identifiable incident or injury, plaintiff began to experience pain in her right hip. Once her symptoms began they subsequently worsened, thus requiring her to seek medical treatment four to five days later at Beach Medical Center, where x-rays of her hip did not show a fracture or any abnormality and she was diagnosed with bursitis. Despite her symptoms plaintiff was able to continue regularly working until the August 22, 1995 date in question, with the exception of two days when the restaurant was closed because of a hurricane.
7. Upon reporting to work at 3:00 p.m. on August 22, 1995, plaintiff was continuing to experience right hip problems which caused her to noticeably limp. Despite the pains in her hip, plaintiff was able to complete the work day, but she required her husband's help to reach her car at the end of the work shift. Plaintiff then drove home and, as she was climbing the steps at her residence, something popped in her right leg. She was subsequently unable to put any weight on that leg because of the resulting stress fracture of the right hip.
8. On the following day plaintiff sought medical treatment at Outer Banks Medical Center. Subsequently, she was referred to an Elizabeth City orthopedic surgeon, Dr. James Watson, who performed corrective hip surgery and repaired the stress fracture.
9. Even assuming arguendo that the longer hours on her feet that was required of plaintiff after the restaurant began providing nightly entertainment in mid to late June of 1995 caused or significantly contributed to the disabling right stress fracture of the right hip she sustained on August 22, 1995 when walking up her steps at home, the same injury was not the result of an accident as contemplated by the North Carolina Workers' Compensation Act. The evidence fails to show an interruption of plaintiff's normal work routine. Though the position of restaurant manager required her to be on her feet for substantial periods of time without the opportunity to sit down, plaintiff had been working the extra hours for some two months. Therefore, this constitutes a sufficient period of time for the additional work to become part of her normal and expected work routine rather than an interruption.
Further, there is no evidence that plaintiff's restaurant manager's job placed her at an increased risk of the type of stress fracture sustained as compared to members of the general public in other employments at large.
10. Since recovering from the disabling right hip injury giving rise hereto in March of 1996 plaintiff has worked as a desk clerk at her brother's motel because the same job allowed her to sit down a lot more than her restaurant manager's job and she was no longer able to do the walking required as a restaurant manager after her hip injury.
* * * * * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Even assuming arguendo that plaintiff's disabling right hip fracture of August 22, 1995 arose out of and in the course of her employment, the same injury was not the result of an accident as contemplated by G.S. 97-2(6) and, absent an accident, the Workers' Compensation Act does not provide compensation for injury. In order to have a compensable accident there must be an interruption of the normal work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences. Garman v. Tridair Industries, 14 N.C. App. 574,188 S.E.2d 523 (1972). "Injury" and "(a)ccident" do not mean the same thing and an injury does not occur by accident if the employee, as in the instant case, at the time was merely carrying out her usual and customary duties in the usual way.Russell v. Yarns, 18 N.C. App. 249, 195 S.E.2d 571
(1973).
Further, even assuming arguendo that plaintiff's disabling right hip fracture of August 22, 1995 was due to the extended periods of standing required by her restaurant manager's job, there is no evidence that the same job placed her at an increased risk of the same type of injury as compared to members of the general public in other employments at large. G.S. 97-53(13).
* * * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim must be and is hereby DENIED.
2. Each side shall bear its own cost.
 S/ __________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ __________________ THOMAS J. BOLCH COMMISSIONER
S/ __________________ J. HOWARD BUNN, JR. CHAIRMAN